Good morning, Your Honors. May it please the Court, M. Cora Alvinanti on behalf of Petitioner Clarence Hernandez, who's present in court today. Your Honor, this appeal is of the BIA's August 31st, 2009 decision dismissing Petitioner's appeal of the immigration judge's May 14th, 2009 decision, which denied his request for continuance and which also denied his claim to U.S. citizenship. The issues in this case are whether the immigration judge incorrectly found that Petitioner was a legitimate child and that 8 U.S.C. 140.1A.7 applied to him. That requirement under 8 U.S.C. 140.1A.7 provides that if you are claiming citizenship under your U.S. parent, in this case his mother, Clara Hernandez, she must have at least 10 years of physical presence in the United States or its territories, of which those 10 years, five of them, have to be after she's 14 years of age. The second issue is whether the BIA incorrectly ruled that even if Petitioner was born out of wedlock in the Philippines, he was legitimated when his parents married. The BIA cited matter of Manguro. Your Honor, in these cases, my client arrived in the United States on February 9th, 1983, as an IR2, unmarried child, under 21 years of age, of a U.S. citizen parent. On June 14th, 2000, he was convicted of burglary in violation of Hawaii Revised Statute 708.81 and attempted burglary 708.500. And on December 26th, 2007, he was convicted of theft in the second degree in violation of Hawaii Revised Statute 708.831. These made him removable and without any form of relief. However, Petitioner has always asserted that he was a U.S. citizen at birth. Petitioner asserts that he was a child born out of wedlock to an American citizen mother who had one year continuous presence in the United States. In other words, his chances of being a citizen are better if he were illegitimate. Is that right? Yes. Okay. Yes, Your Honor. So you're trying to say he was illegitimate, not legitimate? Yes. He was an illegitimate child of an American citizen mother, and he had acquired U.S. citizenship under USC 1409C. In October 20th, 1981, Clara Hernandez, an American citizen who was born on Maui in 1934, left Hawaii in 1935 to the Philippines with her parents. She stayed there until she came back to the United States in 1977. She acquired 12 years of physical presence in the United States because in 1945, the Philippines became independent of the United States. So as a result, she acquired 12 years of physical presence in the United States and or a territory. However, she did not have the five years after the age of 14. Okay. So when she petitioned her son, she petitioned her son as an unmarried son under 8 U.S.C. 1153A2. To qualify as a son for preference purposes, the beneficiary must qualify as a petitioner's child as defined under 101B of the Act. Is there any doubt that he was treated as illegitimate, leaving aside the question of when the birth occurred? There is, Your Honor. What's in the record that would indicate that his parents did not treat him as legitimate? On the record on his birth register, it does not indicate that he was illegitimate. No, I understand. It's not. But I mean in terms of subsequently, in terms of how he was treated after they were married, it seems to me that he was always treated as their son. Isn't that true? Yes, Your Honor. So if he's treated as legitimate, why doesn't that? Go ahead. The reason why he could not be treated as legitimate was because Clara Hernandez had three husbands. Her first husband, she had five children passed away, Mr. Arellano. Then she married a Mr. Ramos. She had two children by Mr. Ramos. Those two children preceded Clarence Hernandez, and she never divorced Mr. Ramos. In the Philippines, you can't get divorced. And so as a result, when she married Mr. Hernandez, that was a void marriage. Mr. Hernandez, the son, could not become legitimated because of the previous marriage that the mother, Clara Hernandez, had to Mr. Ramos. What do you want us to do? Your Honor, if you could send this case back to the federal district court so that the court in Hawaii can determine his nationality. And what's the reason? Why would we want to do this? Because, Your Honor, my client— What's in the record that would support that? And what does the district court have to do? The district court would look to the evidence that would be provided by the petitioner with respect to his mother's previous marriages, whether, in fact, the marriage to Mr. Hernandez was, in fact, legal. There was no marriage license that was provided. There was no marriage contract that was provided to the USCIS. All those things were lacking. Those were like red flags that indicated that something was wrong. However, a mother, an American citizen mother, can transfer American citizenship to her son. She doesn't have to prove paternity. Under the amendments to 101B of the Act in 1957, Congress provided that an illegitimate child of an American citizen mother could be considered a child under the definition of 8 U.S.C. 1153A. And the mother doesn't have to prove that he's legitimate or illegitimate, just that he's her child. And that's what Clara Hernandez did. When she filled out the I-130, which was provided by the USCIS to the immigration court, nowhere in that I-130 application, Petition for Alien Relative, does she indicate that he is a legitimate child. There was an N-600 application filed. Yes, Your Honor. And what happened to that? That's still pending, Your Honor, for the USCIS. They never ruled on it? No. So today you've argued that the marriage was void from the beginning. Yes. That's the first time you've raised that. Yes. Is that true? Yes. So you didn't present it before the BIA. You argued that basically what you've, part of what you argue today is that the box wasn't checked. Yes, Your Honor. What are we to do with that? I mean, the government's sitting here and hearing it for the first time, too. Well, I just received a copy of his sibling's birth certificate, an older sibling's birth certificate, which shows that his mother was married to a Mr. Ramos, and these were the two siblings that were born before him. So if she was, in fact, married to Mr. Ramos, her subsequent marriage to Mr. Hernandez would be considered void ad finitum. Well, you've got a lot of factual issues there. Yes, Your Honor. Some of which you raised before, some of which you didn't. Why don't you take them over for the next minute and a half, which is what you have left for your rebuttal. Your Honor, basically, I'll leave it at that. You'll have a minute and a half to rebuttal. Okay. Thank you. Thank you, Your Honor. Counsel? Good morning. May it please the Court. John Holt for the Attorney General. There's no genuine issue as to material facts as to the United States citizenship claim of Petitioner. And secondly, the uncontradicted documentary evidence establishes there's no merit to a citizenship claim. If we look, as Judge Paez asked us to do, look at the record, we see, first of all, the birth certificate. The birth certificate establishes that he was a legitimate child, that he was born after the marriage of his mother and his father. There is a second birth certificate. The first birth certificate I referred to is the one Petitioner offered to the Court. The second birth certificate is the one the Department of Homeland Security offered. And it establishes also that he was born in wedlock because it establishes the date of his marriage, the date of his birth. Under Philippine law, that was sufficient? I beg your pardon, sir? Under Philippine law, that was sufficient? There was no requirement to be registered? There is no, Petitioner submitted no evidence and no law to establish that under Philippine law, the registration established the legitimacy of the birth. The documentary evidence establishes unequivocally that it was a legitimate birth. Under Philippine law? The Philippine birth certificate indicates that he was a- Well, no, I don't want to know what it indicates. I asked what Philippine law is if there's no registration of that after the marriage. There's nothing in the record, and that point was never raised or addressed. So are you talking about the certificate of live birth filed at DHS? AR-105? 105 is the document that the Department of Homeland Security submitted. And what's significant about that document is that it says that his parents were married. It does have a blank with regard to whether the- Which box is that? That's box number 23 on 105. And it says the block 23 says legitimate, and it's blank. I'd also invite the court to the fact that sex is blank, and there are a couple of other- So what does that tell us? What that tells you is that there's nothing that contradicts AR-137, which indicates that he was legitimate. If block 23 had been checked illegitimate, we wouldn't be here today. But in addition to the birth certificate, we have the marriage certificate, and the marriage certificate reflects that, indeed, the parents were married on 6-28-75, and the petitioner was born on 9-8-76. The petitioner's mother filed an I-130 for her son. When she filed that I-130, she never asserted that he was an illegitimate child. She stated the date of his birth and the date of the marriage. Most significantly, in requesting a continuance, petitioner's mother filed an affidavit with the court. That affidavit is at page 155 of the record. On 155 of the record, in that sworn affidavit, petitioner's mother never asserts that he was an illegitimate child. Well, when reviewing a decision by the BIA, what's going on in that other proceeding? I don't know what's taking the government all this time to decide that question. But he said that it was never a question about whether it was registered or the marriage was recorded. In the BIA decision, it talks about when the marriage is recorded. Are you referring to the N-600, Your Honor? I'm talking about whether Philippine law requires that in order for the marriage to be legitimate, it has to be recorded within a certain amount of time. The petitioner has never presented any law at all with regard to, under Philippine law, it's the registration rather than the date of the birth. Right, but do you know one way or the other? The government does not submit to the court one way or the other on that particular point because the petitioner didn't present any evidence at that point. No, I know that. But, I mean, we're talking about – we're not talking about what the petitioner did. I'm asking you, and I think maybe Judge Reinhardt is too, what is the government position on the Philippine law? And if you don't know, that's fine. We don't know, Your Honor. So you don't have any position on whether the marriage was legitimate under Philippine law. The board did not address that particular point. It was not raised by the petitioner, and we don't have a position. If we were to conclude that the record – the documents in the record were sufficient to raise a factual dispute regarding when the marriage was registered, and we sent it to the district court, could these other issues be explored? Couldn't these other issues be explored in the district court? It's a de novo determination of citizenship, and citizenship is before this court, and so, yes, those matters could be. But we would submit that Congress – What the district court does is just makes a determination. It makes factual findings that we can't do. That's correct. But we would submit that there's no contradiction in the factual record, and because there's no contradiction in the factual record, this court, addressing the citizenship claim de novo, should decide that Congress and – What we'd have to say is, you know, if you apply the summary judgment standard, what you would say is there's only one conclusion that could be drawn here. A reasonable juror can only conclude one thing. There is no genuine issue as to material fact in this case. No, no, not that genuine. Your – it would be that the only factual conclusion that a trier of fact could conclude would be that he was not – he was legitimate. That's correct. Unless you considered Philippine loft, which you say we can't consider because it wasn't raised. That's right. They didn't raise that, and the board didn't address that. But the district court could consider it. The district court – absolutely. It's amazing, but – Well, you know, a claim of citizenship is pretty – you know, it's pretty significant. It's a foundational principle, and you're right. Indeed, this court even has no jurisdiction if he's a United States citizen. That's correct. And whether he's a citizen or not may well depend on Philippine loft. Again, petitioner never made that assertion. No, I understand. But we have an obligation to the law, right? So, I mean, if our investigation shows that Philippine loft might raise a question, then I suppose we'd have to resolve that in a different form. Exactly right, Judge Thomas. If the registration of the marriage is the – The date as opposed to the – That establishes the legitimacy of the marriage under Philippine loft, then it would be appropriate to remand that. But we find no authority that establishes that, particularly in this case where the record – What do you say we find no authority? Have you looked to see if there's authority? No, we don't take position on it. And I expect you were surprised, at least I was, to hear about the new argument. Do you have any response to it? Yes, Petitioner's claim to citizenship has continued to morph over time, and this is an entirely new assertion that has never been made. Right, I understand that. I just want to give you an opportunity to respond if you have any response. The first time we ever heard of it was this morning. With regard to Petitioner's assertion that the N-600 has not been acted upon, with all due respect, I do correct my colleague, the N-600 was denied by the Department of Homeland Security. But what the Department of Homeland Security did recently, literally within the last month, is because Petitioner filed the wrong form to appeal that administrative determination of no citizenship. They afforded Petitioner an opportunity to file an appeal of that administrative denial. At this time, I have no knowledge of whether Petitioner has availed themselves of that opportunity to do so. And that appeal goes to the BIA or some other? It goes to USCIS and there's an appeal. It takes some considerable time, six to eight months, but I do want to affirm to the Court that the N-600 administrative action on her request for declaration of citizenship was denied by USCIS. Right. So the only thing, if I'm understanding you correctly, the only thing that's pending is the potential for an appeal and you don't know the status of she? I do not. I have attempted to, but I just couldn't find out this morning. And I'll inform the Court that today's the last day. The 18th of October is the last day to file an appeal of that administrative decision. In summary, Your Honor, we submit that Congress has established the statutory requirements for citizenship. In this particular case, what's happened is Petitioner's mother did not satisfy the requirement of prior to his birth having five years of physical presence in the United States. And that's why the citizenship claim is without merit. Which is only true if she was married. That's correct, Your Honor. And whether she was married depends on Philippine law. That's correct. Thank you. Your Honor. Do you have anything further? You have a minute and a half, approximately. Yes, Your Honor. Your Honor, lastly, I'd just like to argue that there are genuine issues of fact, that the I-130 that was provided and filled out by mother provides that she did have children, Eddie Arellano, Claudito Arellano, and Domingo Acoili. All these children were provided for in her I-130 application. But it's not mentioned in the certificate of live birth for her son, Clarence Hernandez, that she had children from prior marriages. Those issues are genuine issues of fact that can be decided by the district court. And probably that's also why the registrar did not check off legitimate or illegitimate in his certificate of live birth. So have you filed an appeal, administrative appeal? Yes, Your Honor. And when did you do that? It's still pending, Your Honor. When did you file the notice? When did you send in the notice of appeal? Two weeks ago, Your Honor. And this is of the N-600? The denial of the N-600. So you got a new opportunity to appeal. They let you know that, and you filed something since then? Yes. Okay. Thank you, counsel. The case is there. You can submit it.
judges: Reinhardt, Thomas, Paez